# IN THE UNITED STATES DISTRICT COURT
# FOR DISTRICT OF DELAWARE

| | |
|---|---|
| DEMETRA LEWIS,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>LEXISNEXIS RISK SOLUTIONS INC.,<br><br>　　　　　　Defendant. | Case No.:<br><br>**COMPLAINT AND DEMAND**<br>**FOR JURY TRIAL** |

Demetra Lewis ("Plaintiff" or "Ms. Lewis"), by and through the undersigned counsel, brings this action on an individual basis, against LexisNexis Risk Solutions, Inc. ("Defendant" or "LexisNexis") for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq* and states as follows:

## INTRODUCTION

1. The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American consumers. Data technology, whether it is used by businesses, banks, the Internal Revenue Service or other institutions, allows information concerning individual consumers to flow instantaneously to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients and, in theory, all of society should ultimately benefit from the resulting convenience and efficiency.

2. However, unfortunately this information has also become readily available for, and subject to, mishandling and misuse. Individual consumers can, and do sustain substantial damage, both economically and emotionally, whenever inaccurate or fraudulent information is disseminated and/or obtained about them.

1

3. The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

4. These CRAs sell information to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers, and other similar interested parties), commonly called "consumer reports," concerning individuals who may be applying for retail credit, housing, employment, or a car or mortgage loan.

5. Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private, and financial information that they compile and sell about individual consumers.

6. One of the primary purposes in requiring CRAs to assure "maximum possible accuracy" of consumer information is to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

See 15 U.S.C. § 1681(a)(1).

7. The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible

> destruction of his good name without his knowledge and without reason. Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed.

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 cong. Rec. 36570 (1970)] (emphasis added).

8. The FCRA also requires CRAs to conduct a reasonable reinvestigation to determine whether information disputed by consumers is inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which the CRA receives the notice of dispute from the consumer. This mandate exists to ensure that consumer disputes are handled in a timely manner and that inaccurate information contained within a consumer's credit report is corrected and/or deleted so as to not prevent said consumer from benefiting from his or her credit and obtaining new credit.

9. In light of these important findings and purposes, Congress specifically noted "a need to insure that [CRAs] exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy." *See* 15 U. S.C. § 1681(a)(4).

10. The FCRA also requires furnishers of information, a creditor or other third party that provides information about consumer to a CRA, upon notice, to conduct a reasonable reinvestigation of all disputes with regard to the completeness or accuracy of any information it provides to the CRAs regarding a consumer and modify, delete, or permanently block any items of information found to be inaccurate, incomplete, or unverifiable after said reinvestigation is completed.

11. Plaintiff's claims arise out of Defendant LexisNexis's blatantly inaccurate credit reporting, wherein, upon information and belief, LexisNexis inaccurately reported to Plaintiff's potential insurers that, according to the DELAWARE DEPARTMENT OF MOTOR VEHICLES,

Plaintiff was subject to a Probable Cause Driver's License Violation in May of 2024 for driving with a BAC (Blood Alcohol Concentration) of .16, which is double the legal limit in Delaware.

12. Accordingly, Plaintiff brings claims against Defendant LexisNexis for failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports, in violation of the FCRA, 15 U.S.C. § 1681e(b), and failing to conduct a reasonable reinvestigation to determine whether information Plaintiff disputed was inaccurate and record the current status of the disputed information, or delete the disputed information from Plaintiffs credit file, in violation of the FCRA, 15 U.S.C. § 1681i.

13. As part of this action, Plaintiff seeks actual, statutory, and punitive damages, costs and attorneys' fees from Defendant for its willful and/or negligent violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*., as described herein.

## PARTIES

14. Demetra Lewis ("Plaintiff" or "Ms. Lewis") is a natural person residing in Wilmington, Delaware, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

15. Defendant LexisNexis Risk Solutions, Inc. ("Defendant LexisNexis" or "LexisNexis") is a Delaware corporation doing business throughout the United States, including the State of Delaware and in this District, and has a principal place of business located at 1000 Alderman Drive, Alpharetta, Georgia 30005. LexisNexis can be served at its registered agent, C T Corporation System, located at 289 South Culver Street, Lawrenceville, Georgia 30046.

16. LexisNexis is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). LexisNexis is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

**JURISDICTION AND VENUE**

17. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

**FACTS**

**A.     Summary of the Fair Credit Reporting Act**

19. The FCRA governs the conduct of consumer reporting agencies in an effort to preserve the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

20. The FCRA was designed to protect consumers from the harmful effects of inaccurate information reported in consumer reports (commonly referred to as "credit reports"). Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. *See* 15 U.S.C. § 1681(a).

21. Specifically, the statute was intended to ensure that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. *See* 15 U.S.C. § 1681(b).

22. To that end, the FCRA imposes the following twin duties on consumer reporting agencies: (i) consumer reporting agencies must devise and implement reasonable procedures to

ensure the "maximum possible accuracy" of information contained in consumer reports (15 U.S.C. § 1681e(b)); and (ii) consumer reporting agencies must reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies (15 U.S.C. § 1681i).

23. The FCRA provides consumers with a private right of action against consumer reporting agencies that willfully or negligently fail to comply with their statutory obligations under the FCRA.

**B.     Factual Background**

24. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

25. Defendant LexisNexis sells millions of consumer reports (often called "credit reports" or "reports") per day.

26. Pursuant to 15 U.S.C. § 1681e(b), consumer reporting agencies, like Defendant LexisNexis, are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

27. Pursuant to 15 U.S.C. §§ 1681b and 1681e(a), consumer reporting agencies, like Defendant LexisNexis, must maintain reasonable procedures to assure that consumer reports are sold only for legitimate "permissible purposes."

28. Defendant LexisNexis obtains consumer information from various sources.

29. The majority of institutions that offer auto insurance rely upon consumer reports from CRAs (like Defendant LexisNexis) to make insuring decisions.

30. The information Defendant LexisNexis includes in a consumer report contributes to a consumer's overall insurance worthiness.

31. Defendant LexisNexis routinely reports inaccurate and materially misleading information about consumers like Plaintiff, without verifying or updating it as required by Section 1681e(b) of the FCRA.

32. Defendant LexisNexis fails to employ reasonable procedures to assure the maximum possible accuracy of the information that it reports about consumers.

33. Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau Complaints against Defendant LexisNexis for its inaccurate credit reporting.

34. Thus, Defendant LexisNexis is on continued notice of its inadequate reporting procedures. Specifically, Defendant LexisNexis is on notice that its inadequate procedures regularly result in the reporting of inaccurate information.

35. Defendant LexisNexis has received and documented many disputes from consumers complaining that LexisNexis reported inaccurate information about them.

**C.     Plaintiff Attempts to Secure Auto Insurance**

36. In November 2024, Plaintiff maintained car insurance from Geico.

37. In or around December 2024, however, Plaintiff began shopping around for alternative car insurance with more favorable rates, because Plaintiff notices that Geico was about to drastically increase her insurance policy rates.

38. In December 2024, Plaintiff applied for and secured car insurance from Root Insurance which Plaintiff thought had offered her a far superior and reduced insurance policy rate.

39. However, Plaintiff soon discovered that Root Insurance's insurance policy rate was also set to dramatically increase, making it unreasonable and unaffordable.

40. Accordingly, on or about January 15, 2025, Plaintiff canceled and terminated her Root Insurance policy.

41. Plaintiff was confused by the extraordinarily high policy rates that Geico and Root Insurance had wanted to charge her for car insurance.

42. Thereafter, Plaintiff continued shopping for car insurance, unsuccessfully.

43. In particular, Plaintiff tried to reinstate her insurance with Geico, but much to her surprise, Geico denied her insurance application having insured her previously.

44. Plaintiff did not understand why her rates would be so high, but it simply made no financial sense to purchase the extremely expensive car insurance, so, despite requiring a vehicle for transportation to commute to work, Plaintiff's vehicle remained uninsured and, therefore, unused.

45. In or around February 2025, and through March and April of 2025, Plaintiff resumed her car insurance search and applied to a number of auto insurance companies, including Allstate, Geico, State Farm, National General Insurance, and Progressive.

46. Upon information and belief, most of Plaintiff's insurance applications were denied.

47. Upon information and belief, Plaintiff was offered car insurance from one insurer, but with an astronomically high rate of approximately $2,000 per month.

48. Throughout this time-period, Plaintiff was effectively unable to secure car insurance, and therefore unable to register her vehicle, and, therefore, her vehicle remained parked in her parking spot, without being used.

49. During this time period, Plaintiff was still required to make continued monthly auto loan payments, despite not being able to use her vehicle.

**D.     Defendant LexisNexis Continues to Publish Inaccurate Reports about Plaintiff to Third Parties**

50. In or around April 2025, Plaintiff again attempted to secure car insurance from Allstate.

51. In response, an Allstate representative informed Plaintiff that it was unable to insure her because there was a DUI reported about her occurring in 2024.

52. After Plaintiff protested and explained that she did not have any record of a DUI in 2024, the Allstate representative emailed Plaintiff a copy of a document that reflected a 2024 DUI concerning Plaintiff.

53. Plaintiff first became aware that a 2024 DUI was being reported about her when Allstate informed her of the same, in or around April 2025.

54. Plaintiff was confused and distressed by this information because she was not arrested, charged with, or convicted of any DUI or DUI-related violations in 2024 or 2025.

55. Distressed, on or about April 21, 2025, Plaintiff traveled to the Delaware Department of Motor Vehicles ("DMV") to inquire about the DUI reported about her and ascertain its origin.

56. The DMV informed her, however, that it did not have a record of her being the subject of a DUI or DUI-related violation affiliated with her at all during the past three years.

57. Further, upon her request, Plaintiff obtained a copy of her Three-Year Driving Record from the State of Delaware, which reflected that she had no DUI or DUI-related records reported at any point in that during that three-year period. In fact, there was no adverse information reported at all during the entirety of 2024 up to the date she had obtained it, on April 21, 2025.

58. Still frustrated and worried, Plaintiff also traveled to a court and a police station and inquired about the DUI that was reported about her.

59.     However, nobody could confirm that she had any DUI or DUI-related record associated with her.

60.     Upon information and belief, Defendant Lexis had reported to multiple third-party insurers that Plaintiff was associated with a DUI or DUI-related record.

61.     Upon information and belief, Defendant Lexis's reporting of the DUI or DUI-related record about Plaintiff occurred beginning at least as early as October 2024 until and through the present, during which time Defendant Lexis reported the same to numerous third-party insurers, including Allstate, Geico, State Farm, National General Insurance, and Progressive, some on multiple occasions.

62.     Upon information and belief, Defendant Lexis indicated to the aforementioned entities that Plaintiff was driving with a BAC of .16, which is double the legal limit.

### E.     Plaintiff's Dispute Regarding the Inaccurate Credit Reporting May 2025

63.     In or around May 2025, extremely shocked, surprised, and embarrassed at Defendant LexisNexis's inaccurate reporting, Plaintiff disputed the inaccurate information that Plaintiff had a DUI or DUI-related record in 2024.

64.     Specifically, Plaintiff called LexisNexis on the phone and explained that she did not have a DUI or DUI-related record in 2024, that the reporting of same was making it effectively impossible for Plaintiff to secure car insurance, and that Defendant should remove the inaccuracy from her report.

### F.     Defendant LexisNexis' Unreasonable Dispute Reinvestigation

65.     On or about June 2, 2025, LexisNexis sent Plaintiff a copy of her LexisNexis consumer disclosure.

66. Upon reviewing the disclosure dated June 2, 2025, Plaintiff noticed that Lexis was reporting a 2024 DUI as associated with her Driver's License as follows:

| RECORD 3 | Driver's License Violation Details: | | | |
|---|---|---|---|---|
| | • Code: | 2742 C1 | • Type: | Departmental |
| | • Points: | 0 | • Case Status: | |
| | • Incident Date: | 05/28/2024 | • Resolution Date: | 01/15/2025 |
| | • Commercial Driving License: | | | |
| | • Case Disposition: | | | |
| | • Additional Violation Details: | PROBABLE CAUSE COURT CODE:ZZ BAC: .16 | | |

*Record 3 Source Details: DELAWARE DEPARTMENT OF MOTOR VEHICLES*

67. LexisNexis failed to correct or delete the inaccurate DUI from Plaintiff's credit file.

68. LexisNexis failed to conduct a reasonable reinvestigation of Plaintiff's May 2025 dispute, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

**G.   Plaintiff's Dispute Regarding the Inaccurate Credit Reporting September 2025**

69. Plaintiff was at a complete loss about how to react or correct her record.

70. On or about September 10, 2025, Plaintiff disputed the inaccurate information that Plaintiff had a DUI in 2024 with Defendant, this time in writing.

71. Plaintiff explained that she was not arrested, charged with, or convicted of any DUI or DUI-related violations in 2024, and any reporting suggesting that she had a DUI was inaccurate.

72. Plaintiff requested that Defendant LexisNexis reinvestigate the disputed information, correct the reporting, and send her a corrected copy of her credit report.

**H.   Defendant LexisNexis's Unreasonable Dispute Reinvestigation**

73. Plaintiff's dispute letter to Defendant LexisNexis was delivered on September 19, 2025.

74. Plaintiff did not hear back from LexisNexis regarding her September 2025 dispute of the reported DUI.

75. Thereafter, and upon information and belief, LexisNexis failed to correct or delete the inaccurate DUI from Plaintiff's credit file.

76. Upon information and belief, LexisNexis failed to conduct a reasonable reinvestigation of Plaintiff's September 2025 dispute, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

77. On or about October 22, 2025, Plaintiff contacted LexisNexis and requested a copy of her report from LexisNexis in hopes that LexisNexis had corrected the report.

78. In response, LexisNexis mailed a letter dated October 22, 2025, stating that Plaintiff's request could not be processed. LexisNexis refused to provide Plaintiff with a copy of her file disclosure.

79. Plaintiff reasonably believes that Defendant LexisNexis continued to maintain, in her credit file, that Plaintiff had a DUI from 2024.

80. Plaintiff reasonably believes that Defendant LexisNexis continued to publish that Plaintiff had a DUI from 2024.

81. As a result of the inaccurate reporting of the DUI, and despite Plaintiff's confirming with Delaware DMV that she did not have a DUI or DUI-related record, Defendant made it practically impossible for Plaintiff to secure car insurance.

82. Without the use of a vehicle, Plaintiff was left without the ability to commute, and she felt stranded and isolated.

83. Plaintiff needed a vehicle to commute to work and for other transportation; Plaintiff was forced to either ask friends for rides or pay for Uber rides.

84. Plaintiff, at other times, rented a vehicle in order to commute and for transportation.

85. If not for Defendant's inaccurate reporting and violations of the FCRA, Plaintiff would have been able to secure car insurance and been able to use her vehicle without interruption and avoid the need for expensive Ubers or car rentals, or the need to engage in the humiliating and logically limiting exercise of hitching rides with others.

86. Because Plaintiff has been unable to secure car insurance, she has been unable to drive her vehicle. She has been forced to continue to make monthly payments for the auto loan on a vehicle she cannot drive for want of insurance. She has been forced to pay for Uber type services and rely on transportation as provided by her friends to commute to and from work. The Uber type services typically cost anywhere from $20-$35 each way for Plaintiff's work commute. All other personal errands and the ability to simply live her life in terms of using her own vehicle to commute have been encumbered and obstructed by Defendant's inaccurate report.

87. Had Defendant reviewed the widely available and accessible public records, it would have noticed that the 2024 DUI record was not associated with Plaintiff. At the very least, Defendant would have noticed that it did not have sufficient information by which to accurately and reliably associate Plaintiff with the 2024 DUI record.

88. Still, Defendant published numerous reports to third-party insurers, over a period of many months, with the 2024 DUI and without first reliably verifying that the information belonged to Plaintiff.

89. At all times pertinent hereto, Defendant was acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant herein.

90. At all times pertinent hereto, the conduct of Defendant, as well as that of their respective agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

91. Defendant LexisNexis is aware of the shortcomings of its procedures and intentionally chooses not to comply with the FCRA to lower its costs. Accordingly, Defendant LexisNexis's violations of the FCRA are willful.

92. As a result of Defendant's conduct, action, and inaction, Plaintiff suffered damage by loss of insurance; loss of ability to secure insurance; the expenditure of time and money in order to commute without an insured vehicle; the expenditure of time and money disputing and trying to correct the inaccurate reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of auto insurance denials and effective denials in the form of exorbitantly high rates.

### CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy
### (First Claim for Relief Against Defendant LexisNexis)

93. Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

94. The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to ensure the "maximum possible accuracy" of consumer reports, as follows:

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure ***maximum possible accuracy*** of the information concerning the individual about whom the report relates.

15 U.S.C. §1681e(b) (emphasis added).

95. On numerous occasions, Defendant LexisNexis prepared patently false consumer reports concerning Plaintiff.

96. Defendant LexisNexis readily sold such false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's insurance-worthiness.

97. Defendant LexisNexis violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

98. As a result of Defendant's conduct, action, and inaction, Plaintiff suffered damage by loss of insurance; loss of ability to secure insurance; the expenditure of time and money in order to commute without an insured vehicle; the expenditure of time and money disputing and trying to correct the inaccurate reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of auto insurance denials and effective denials in the form of exorbitantly high rates.

99. Defendant LexisNexis's conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

100. Plaintiff is entitled to recover attorneys' fees and costs from Defendant LexisNexis in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT II**
**15 U.S.C. § 1681i**
**Failure to Perform a Reasonable Reinvestigation**
**(Second Claim for Relief Against Defendant LexisNexis)**

101. Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

102. The FCRA mandates that a CRA conducts an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681i(a)(1). The Act imposed a 30-day time limit for the completion of such an investigation. *Id*.

103. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

104. On at least two occasions during the past year, Plaintiff disputed the inaccurate information with LexisNexis and requested that it correct and/or delete a specific item in her credit file that is patently inaccurate, misleading, and highly damaging to her, namely, the inaccurately reported 2024 DUI record which did not belong to her.

105. In response to Plaintiff's dispute, LexisNexis failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in Plaintiff's credit file.

106. Defendant LexisNexis violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which it received the notices of dispute from Plaintiff; and

by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

107. As a result of Defendant's conduct, action, and inaction, Plaintiff suffered damage by loss of insurance; loss of ability to secure insurance; the expenditure of time and money in order to commute without an insured vehicle; the expenditure of time and money disputing and trying to correct the inaccurate reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of auto insurance denials and effective denials in the form of exorbitantly high rates.

108. Defendant LexisNexis's conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

109. Plaintiff is entitled to recover attorneys' fees and costs from Defendant LexisNexis in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT III**
**15 U.S.C. § 1681g**
**Failure to Provide Disclosure**
**(Third Claim for Relief Against Defendant LexisNexis)**

110. Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

111. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

112. Defendant is a "consumer reporting agency" ("CRA") as defined by 15 U.S.C. § 1681a(f), and at all relevant times engaged in the business of preparing and furnishing consumer reports.

113. On or about October 22, 2025, Plaintiff requested of Defendant "all information in Plaintiff's file" as permitted by 15 U.S.C. § 1681g(a). Plaintiff's request was made online and provided all identifying information necessary for Defendant to locate Plaintiff's file.

114. Under 15 U.S.C. § 1681g(a), a consumer reporting agency is required to clearly and accurately disclose to the consumer all information in the consumer's file at the time of the request, along with the sources of the information and other required disclosures.

115. Defendant failed to provide any disclosure in response to Plaintiff's request. Despite receiving Plaintiff's request, Defendant did not supply Plaintiff with a consumer file disclosure.

116. Defendant's failure to provide Plaintiff with the required file disclosure is a violation of 15 U.S.C. § 1681g(a).

117. Defendant LexisNexis violated 15 U.S.C. § 1681g(a) by failing to provide Plaintiff with the required file disclosure.

118. As a result of Defendant LexisNexis's conduct, action, and inaction, Plaintiff suffered damage the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, including in not understanding whether Defendant had corrected its file about her and in whether they were still confusing her for someone else.

119. Defendant LexisNexis's conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

120.    Plaintiff is entitled to recover attorneys' fees and costs from Defendant LexisNexis in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for the following relief:

a)    Determining that Defendant negligently and/or willfully violated the FCRA;

b)    Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

c)    Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and

d)    Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: December 30, 2025            Respectfully submitted,

*/s/ Antranig N. Garibian*
Antranig N. Garibian, Bar No. 4962
**GARIBIAN LAW OFFICES, P.C.**
1523 Concord Pike, Suite 400
Wilmington, Delaware 19803
Office: (302) 722-6885
Email: ag@garibianlaw.com

*Attorneys for Plaintiff Demetra Lewis*